[Cite as *Cleveland v. McIntyre*, 2021-Ohio-2517.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 109947 |
| v. | : | |
| AUDREY MCINTYRE, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 22, 2021

Civil Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2019-CVH-011677

*Appearances:*

Douglass & Associates Co., L.P.A., David M. Douglass, Sean F. Berney, Michael E. Reardon, and Daniel J. Wodarczyk, *for appellant.*

Milton A. Kramer Law Clinic Center, Case Western Reserve University School of Law; Joseph Shell and Andrew S. Pollis, Supervising Attorneys; Bryce P. Saunders and Jeffrey P. Scott, Legal Interns, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Plaintiff-appellant city of Cleveland ("the city") appeals the trial court's decision to grant summary judgment to the defendant-appellee Audrey McIntyre ("McIntyre"). We affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} On July 24, 2019, the city filed a complaint against McIntyre for costs incurred by the city for demolition and nuisance abatement services rendered at 11816 Forest Avenue ("the property"). On May 8, 2020, McIntyre filed her answer and motion to dismiss, stating that she did not own the property because a third-party fraudulently purchased the property in her name, and there was no dispute of material fact regarding her ownership of the property. The city argued that McIntyre was the owner of record within the chain of title, and that the recording of the limited warranty deed created a presumption of delivery and acceptance.

{¶ 3} McIntyre, who lives in New Jersey, argued that she gave $120,000 to Don Hill ("Hill"), a fellow parent at her daughter's school, to manage. Hill, instead, purchased the property in her name, without her knowledge. According to McIntyre, on April 29, 2008, Hill executed a contract of sale to the former owners, Investors Rehab, who thereafter deeded the property to McIntyre without her knowledge. McIntyre became aware of the transaction when she received a notice from the city, dated April 26, 2010, informing her that the property was in violation

of city ordinances. McIntyre forwarded the letter to Hill, and realized that the property had been unknowingly transferred to her.

{¶ 4} McIntyre executed a quitclaim deed, recorded on September 19, 2012, returning the property to Hill, and his company Matthew Dean Financial ("MDF"). McIntyre also entered into an agreement with Hill where Hill would repay her $120,000 in exchange for McIntyre's agreement to not bring a lawsuit against Hill. Shortly thereafter, the city demolished the property and filed a complaint against McIntyre and MDF to recover its costs. The city subsequently dismissed the complaint against MDF.

{¶ 5} As of September 24, 2013, the nuisance violations on the property were uncorrected, and the city performed an asbestos survey on the property. The city demolished the property and billed McIntyre and MDF for the costs associated with the demolition, collection costs, and attorney fees. The city argued that McIntyre was the owner within the chain of title between the issuance of the violation notice and the date of demolition under R.C. 715.261 and C.C.O. 3103.09.

{¶ 6} The city filed a complaint against McIntyre, and she filed her answer along with a motion to dismiss denying ownership of the properties based on fraudulent conduct by a third party on her behalf. Attached to her motion to dismiss, McIntyre provided the fraudulent contract of sale of the property where her signature was misspelled, and a termination agreement between McIntyre and Hill. Affidavits were not attached to McIntyre's motion to dismiss. McIntyre also argued

that no genuine dispute of material fact existed regarding the city's complaint that she owned the property. The trial court decided to treat McIntyre's motion to dismiss as a Civ.R. 56 motion for summary judgment, and notified both parties. The city filed its own motion for summary judgment against McIntyre, arguing that McIntyre was the owner of record within the chain of title. However, the trial court disagreed with the city's argument and granted summary judgment in favor of McIntyre. The city thereafter filed this appeal, and assigns two errors for our review:

I. The trial court erred in granting summary judgment to the defendant-appellee, when it failed to consider the deed presented by the plaintiff-appellant as sufficient evidence to at least create an issue of material fact as to ownership; and,

II. The trial court erred as a matter of law in denying plaintiff-appellant's motion for summary judgment because there was no issues of material fact as to defendant-appellee's liability for the demolition and nuisance abatement of the property.

## II. Summary Judgment

### A. Standard of Review

{¶ 7} "We review summary judgment rulings de novo, applying the same standard as the trial court." *Montgomery v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 109559, 2021-Ohio-1198, ¶ 18, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Id.*

{¶ 8} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party. Civ.R. 56. "Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E)." *Mattress Matters, Inc. v. Trunzo*, 2016-Ohio-7723, 74 N.E.3d 739, ¶ 10 (8th Dist.).

## B.    Law and Analysis — First Assignment of Error

{¶ 9}   In the city's first assignment of error, it argues that the trial court erred by granting summary judgment in favor of McIntyre because McIntyre failed to authenticate the evidence she presented to the trial court; the recording of the deed created a presumption of delivery and acceptance; and McIntyre accepted ownership of the property by her subsequent conveyance of a deed to MDF.

### 1.    Authentication of the Evidence

{¶ 10} The city asserts that McIntyre failed to authenticate or otherwise support by affidavit any of the evidence presented to the trial court.  We review an evidence authentication challenge under an abuse of discretion standard. *State v. Searles*, 1st Dist. Hamilton Nos. C-180339 and C-180340, 2019-Ohio-3109, ¶ 7. "The decision to admit or exclude evidence rests within the trial court's sound

discretion." *State v. Teague*, 8th Dist. Cuyahoga No. 90801, 2009-Ohio-129, ¶ 5, citing *State v. McGuire*, 80 Ohio St.3d 390, 400-401, 686 N.E.2d 1112 (1997). "Thus, a reviewing court will not reverse the trial court's decision absent an abuse of discretion. An abuse of discretion means more than a mere error of law or an error in judgment.  It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court."  *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶ 11} "Civ.R. 56(E) requires that a document attached to an affidavit submitted in support of a motion for summary judgment 'must be sworn, certified, or personally authenticated based on personal knowledge.'"  *Monitor Bank v. Griffith*, 9th Dist. Wayne No. 16AP0079, 2017-Ohio-7785, ¶ 9.  Evid.R. 901(A) states that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  "'Authentication is a very low threshold, which is less demanding than the preponderance of the evidence.'" *Searles* at ¶ 7, quoting *State v. Patterson*, 1st Dist. Hamilton No. C-170329, 2018-Ohio-3348, ¶ 13.  It merely requires foundational evidence or testimony that allows the trier of fact to determine that the evidence accurately depicts what the proponent claims it to represent.  *Id.*, citing *State v. Crossty*, 2017-Ohio-8382, 99 N.E.3d 1048, ¶ 29 (1st Dist.).

{¶ 12}  In the trial court's judgment entry, it states,

Defendant offers as proof that the deed was not delivered to her or accepted by her: her own direct testimony that she never took delivery of it or accepted it and evidence in the form of documents supporting her explanation of why the deed to her was created and why she never took delivery of it.

Judgment Entry (Aug. 13, 2020).

{¶ 13} The trial court also stated in the judgment entry,

Defendant's testimony is that the deed purporting to transfer the property to her was the result of actions by a Mr. Don Hill of Matthew Dean Financial, who she had entrusted to invest $120,000 from [sic] her in 2008. She later discovered that Mr. Hill was engaged in fraud and was not investing her money but rather spending it on himself. This discovery prompted her to seek to get her investment money back. Hill claimed not to have the money, but he did agree to repay it to Defendant over time, an agreement he then failed to honor. Defendant supports these assertions with documents attached to her answer and motion. When Defendant discovered that Hill had put property in Cleveland in her name, she insisted that he take over any interest she had in the property, perhaps not realizing that it might serve her better to have Hill file with the county a repudiation of the deed to her. That more careful action would have saved her the burden of responding to this lawsuit.

Judgment Entry (Aug. 13, 2020).

{¶ 14} McIntyre initially filed a motion to dismiss. The trial court decided to treat her motion to dismiss as a summary judgment motion. The trial court determined that McIntyre's evidence and testimony accurately depicted what McIntyre claimed. Additionally, McIntyre did not pay property taxes, make any improvement or repairs on the property, or have property insurance. There was no evidence to show that McIntyre rightfully owned the property. *See, e.g.*, *Rice v. Rice*, 7th Dist. Columbiana No. 2001-CO-28, 2002-Ohio-3459, ¶ 25 (appellant used real

estate documents, tax bills, and mortgage information to prove that he was the owner of the property). The city has not demonstrated that the trial court abused its discretion in determining that McIntyre's evidence was authenticated.

## 2. Presumption of Delivery

{¶ 15} The city further contends that the recording of the deed created a presumption of delivery and acceptance in accordance with R.C. 5301.07(B)(1)(a) and (b), which states,

> When a real property instrument is delivered to and accepted by the county recorder of the county in which the real property is situated, and is signed and acknowledged by a person with an interest in the real property that is described in the instrument, the instrument raises both of the following:
>
> (a) A rebuttable presumption that the instrument conveys, encumbers, or is enforceable against the interest of the person who signed the instrument;
>
> (b) A rebuttable presumption that the instrument is valid, enforceable, and effective as if in all respects the instrument was legally made, executed, acknowledged, and recorded.

{¶ 16} The city also cites our decision in *Turney, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 2015-Ohio-4086, 43 N.E.3d 868 (8th Dist.), where this court states, "[r]ecording a deed perfects delivery." *Id.* at ¶ 12, citing *Candlewood Lake Assn. v. Scott*, 10th Dist. Franklin No. 01AP-631, 2001-Ohio-8873. However, in the same decision this court stated, "It is essential to delivery that there not only be a voluntary delivery, but there must also be an acceptance thereof on the part of the grantee, with the mutual intention of the parties to pass title to the property

described in the deed." *Id.* The city has not demonstrated that there was an acceptance on the part of McIntyre, with the mutual intention of McIntyre and Investors Rehab to pass title of the property.

{¶ 17} Additionally, R.C. 5301.07(B)(2) states, "[t]he presumptions described in division (B)(1) of this section may be rebutted by clear and convincing evidence of fraud, undue influence, duress, forgery, incompetency, or incapacity." The trial court determined that McIntyre presented clear and convincing evidence of fraud and forgery on the part of Hill. McIntyre provided the fraudulent contract of sale of the property where her signature was misspelled. In the trial court's judgment entry it stated:

> The central issue in this case is whether Defendant Audrey McIntyre ever accepted delivery of a deed to a vacant house in Cleveland, Ohio, sold for only $1000, which was later condemned and demolished. There is no dispute that a deed purporting to transfer the property to her was recorded with the county. But the recording of a deed does not prove delivery and acceptance of the deed; it only creates a rebuttable presumption of delivery; the presumption "may be rebutted by proof." *Mitchell v. Ryan*, 3 Ohio St. 377, 1854 Ohio Lexis 162 (1854).

Judgment Entry (Aug. 13, 2020).

{¶ 18} The city argues that even if McIntyre's evidence was considered, an issue of material fact exists as to the ownership of the property. However, in a summary judgment motion, "the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial." Civ.R. 56(E). The city did not produce evidence demonstrating that McIntyre

accepted the deed. The trial court echoes this point when it states in its judgment entry: "Plaintiff fails to identify any evidence disputing these facts. Plaintiff observes that Defendant did not make any filing with the County indicating her refusal to accept the deed. But Defendant was not required to do so."

{¶ 19} The trial court continued, stating:

Plaintiff is also wrong to focus on the presumed validity of the deed from Investors Rehab, Inc. under R.C. 5301.07. Defendant is not claiming that the deed from Investors Rehab, Inc. was itself fraudulent; she is claiming that it was not delivered to her and she did not accept it. Plaintiff is correct in noting that Defendant is asserting that the contract of sale for the property, not the deed, was fraudulent. Plaintiff is also correct that a fraudulent contract of sale would not prevent the execution of a valid deed. But Plaintiff's burden in responding to summary judgment is to identify evidence that would allow a finder of fact to conclude that Defendant, though the victim of a fraudulent contract, nevertheless accepted delivery of the deed that followed from the fraudulent contract. Plaintiff could have sought testimony or documents from Hill or Matthew Dean Financial that would call into doubt Defendant's account of when she learned about the deed. Were she a willing participant in the investment of her money in a vacant house in Cleveland, one could expect Matthew Dean to have kept her apprised of its efforts to rent or sell the house. Statements showing those efforts would rebut her testimony that she did not know about the deed from 2008 to 2011. Plaintiff has identified no such evidence.

Plaintiff's response thus fails to identify any evidence rebutting Defendant's claim that she never accepted delivery of the deed. That evidence could have been direct evidence — that she visited the property, took out building permits to make repairs to it, or listed it for sale with realtor. That evidence could also have been indirect — that she participated actively with Hill and Matthew Dean Financial, buying and selling other houses, authorizing them to act in her name, agreeing to decisions about how to invest her $120,000. Plaintiff's response is notably silent about anything it learned about Matthew Dean Financial, which it included in its case at first, later dismissing its claims against that company.

Judgment Entry (Aug. 13, 2020).

{¶ 20} We do not find that the trial court erred when it determined that the city has failed to demonstrate McIntyre accepted the deed.

### 3. Quitclaim Deed

{¶ 21} The city further argues that McIntyre accepted ownership of the property by her subsequent deed to MDF. The city contends that if McIntyre did not have rightful ownership of the property, then she could not have quitclaim deeded the property to MDF. However, a quitclaim deed does not prove ownership, but merely conveys any interest that McIntyre has in the property to MDF. *See Gribben Wardle v. Gribben*, 7th Dist. Columbiana No. 1186, 1979 Ohio App. LEXIS 8785 (Jan. 18, 1979). *See also Karras v. Karras*, 2017-Ohio-5829, 94 N.E.3d 1036, ¶ 6 (2d Dist.), citing *Black's Law Dictionary* 1251 (6th Ed.1990) ("A quit claim deed transfers any interest or claim which the grantor possesses in the property to the grantee.").

{¶ 22} The trial court, in its judgment entry, stated

Plaintiff is completely wrong to state that Defendant's conveyance of her interest by quitclaim deed "could only occur if the Defendant was the owner of the Property at the time." Response at 9. The essence of a quitclaim deed is to convey only the interest a party may have, without promising that that interest amounts to anything. DEED, *Black's Law Dictionary* (11th ed. 2019). The Ohio Supreme Court has held that "[t]he rights of a grantee under a quitclaim deed are no higher than those of his grantor at the time of the conveyance." *Jonke v. Rubin*, 170 Ohio St 41, 162 N.E.2d 116 (1959). *Black's Law Dictionary* defines a quitclaim deed as "a deed that conveys a grantor's complete interest or claim in certain real property but that

neither warrants nor professes that the title is valid." What Plaintiff should have observed is that Hill and Matthew Dean Financial left themselves without valid title to the property, which remained in an entity called "Investors Rehab, Inc." Since Defendant took no ownership, she could not convey ownership to Matthew Dean Financial. Now, the careful course of action would have been for Hill and Matthew Dean Financial to have obtained a deed from Investors Rehab, Inc. It does not appear, however, that Hill and Matthew Dean Financial made it a practice to pursue the careful course of action. They may also have been confident that Investors Rehab, Inc., happy to have received $1000 for the property and not desiring to own it, would be unlikely to trouble Matthew Dean Financial or subsequent owners about title to the property.

Judgment Entry (Aug. 13, 2020).

{¶ 23} We find that the city has failed to produce evidence related to any issue on which the party bears the burden of production at trial. Therefore, the city's first assignment of error is overruled.

## C.  Law and Analysis — Second Assignment of Error

{¶ 24} In the city's second assignment of error, it argues that the trial court erred in denying their motion for summary judgment because there was no issue of material fact as to whether or not McIntyre is liable for the demolition and nuisance abatement of the property. Specifically, the city contends that the evidence provided by McIntyre was insufficient to rebut the presumption of acceptance and delivery established by the deed; MDF had the authority to acquire the property in McIntyre's name; summary judgment in favor of the city was appropriate because McIntyre was the record owner of the property within the chain of title; and, summary judgment in favor of the city is appropriate because McIntyre was properly

issued notice of violation in compliance with C.C.O. 3103.09, 367.04, 369.19, and 369.21.

### 1. Insufficient Evidence

{¶ 25} In the first assignment of error, we ruled that McIntyre's evidence was sufficient to rebut the presumption of acceptance and delivery established by the deed. Therefore, McIntyre did not take ownership of the property.

### 2. Apparent Authority

{¶ 26} The city further contends that MDF had permission to purchase the property in McIntyre's name because a partnership existed between MDF and McIntyre, and such partnership created an agency relationship where MDF had apparent authority to act on McIntyre's behalf. "Apparent authority is defined as 'the power to affect the legal relations of another person by transactions with third persons * * * arising from * * * the other's manifestations to such third persons.'" *Mtge. Electronic Registration Sys. v. Mosley*, 8th Dist. Cuyahoga No. 93170, 2010-Ohio-2886, ¶ 41, quoting *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 576, 575 N.E.2d 817 (1991). "A finding of agency by apparent authority * * * must be based upon words or conduct by the principal." *Koos v. Storms*, 8th Dist. Cuyahoga No. 84260, 2004-Ohio-6020, ¶ 38.

{¶ 27} "A person claiming or asserting the existence of an agency relationship has the burden of proving the existence and extent of the agency." *Id.* at ¶ 40, citing *Irving Leasing Corp. v. M & H Tire Co.*, 16 Ohio App.3d 191, 195, 475

N.E.2d 127 (2d Dist.1984). "There must be corroborating evidence beyond the mere assertion of an agency relationship." *Id.*, citing *Toms v. Delta S. & L. Assn.*, 162 Ohio St. 513, 124 N.E.2d 123 (1955).

{¶ 28} The testimony of McIntyre stating that she gave Hill $120,000 to invest for her is not sufficient evidence that Hill had the authority to purchase a house for McIntyre in Ohio. The city does not offer any corroborating evidence of this agency relationship beyond McIntyre's assertion. The city does not demonstrate that Hill made additional purchases for McIntyre or that Hill invested McIntyre's money at all. Instead, McIntyre offered evidence to the trial court that Hill took her money and used it for his own personal benefit. Therefore, there is not sufficient evidence that Hill and McIntyre had an agency relationship.

### 3. Chain of Title

{¶ 29} The city also argues that summary judgment in favor of the city was appropriate because McIntyre was the record owner of the property within the chain of title. The city cites *Cleveland v. W. E. Davis Co.*, 8th Dist. Cuyahoga No. 69915, 1996 Ohio App. LEXIS 3103 (July 18, 1996), to support its contention. The court in *Davis* decided that when the owner of record is undisputed, "the city is authorized to recover demolition costs from the owner of record." However, the owner of record, in this case, is disputed, because McIntyre never accepted the deed to the property. Additionally, there was clear and convincing evidence of fraud or forgery with regard to the purchase agreement without further evidence of McIntyre's

acceptance of the delivery of the deed. Finally, McIntyre conveyed any interest in the property she had to MDF that does not evidence ownership. The record shows that when the city demolished the property, the owner of record was MDF.

### 4. Notice of Violation

{¶ 30} Further the city contends that summary judgment in favor of the city is appropriate because McIntyre was properly issued notice of violation in compliance with C.C.O. 3103.09, 367.04, 369.19, and 369.21. It has been determined that McIntyre was not the owner of the property, and therefore, we determine that this argument fails. Therefore, the trial court did not err as a matter of law in denying the city's motion for summary judgment.

{¶ 31} The city's second assignment of error is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court, Housing Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EMANUELLA D. GROVES, J., CONCUR